**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━

JACOB A. M.,

                                    Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,          No. 5:24-CV-805
                                                        (MAD/PJE)
                                    Defendant.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**APPEARANCES:**                    **OF COUNSEL:**

Hiller Comerford Injury & Disability Law    JUSTIN M. GOLDSTEIN, ESQ.
6000 North Bailey Avenue- Suite 1a
Amherst, New York 14226
Attorneys for plaintiff

Social Security Administration          GEOFFREY M. PETERS, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

     Jacob A. M.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and 42

U.S.C. § 1383(c)(3) seeking review of a decision by the Commissioner of the Social

Security Administration ("the Commissioner") denying his application for a period of

---

[1] This matter was referred to the undersigned for Report-Recommendation and in accordance with General Order 18 and N.D.N.Y. L.R. 72.3(e).
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

disability and disability insurance benefits ("DIB").  *See* Dkt. No. 1.  Plaintiff moves for the Commissioner's decision to be vacated and remanded for further proceedings.  *See* Dkt. No. 14.  The Commissioner moves for the decision to be affirmed.  *See* Dkt. No. 20.[3] Plaintiff filed a reply.  *See* Dkt. No. 21.  The Commissioner filed a sur-reply.  *See* Dkt. No. 22-1.  For the following reasons, it is recommended that plaintiff's cross-motion be granted, the Commissioner's cross-motion be denied, and the Commissioner's decision be reversed and remanded for further proceedings.

## I.  **Background**

On February 5, 2021, plaintiff filed a Title II application for a period of disability and DIB benefits, alleging a disability onset date of January 28, 2021.  *See* T. at 204-13 (*See* Dkt. No. 6-5).[4]  On March 23, 2021, the Social Security Administration ("SSA") denied plaintiff's claims.  *See id.* at 104-10 (*See* Dkt. No. 6-4).  Plaintiff sought reconsideration, which the SSA denied on June 14, 2021.  *See id.* at 119-33 (*See* Dkt. No. 6-4).  Plaintiff appealed and requested a hearing.  *See id*. at 134-35 (*See* Dkt. No. 6-4).  On November 29, 2021, a hearing was held before Administrative Law Judge ("ALJ") Kenneth Theurer. *See id.* at 37-69 (*See* Dkt. No. 6-2).  On December 9, 2021, the ALJ issued an unfavorable decision.  *See id.* at 12-32 (*See* Dkt. No. 6-2).  On January 14, 2022, the Appeals Council affirmed the ALJ's determination, and the decision became final.  *See id*. at 1-6 (*See* Dkt. No. 6-2).

---

[3] This matter has been treated in accordance with General Order 18.  Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.
[4] "T." followed by a number refers to the pages of the administrative transcript.  *See* Dkt. Nos. 6, 7, 8, 9, 10, 11.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.  Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program located at the header of each page.

On March 11, 2022, plaintiff filed a new Title II application for a period of disability and DIB benefits, alleging a disability onset date of December 10, 2021. *See id.* at 1960-66 (*See* Dkt. No. 7-1). On May 13, 2022, the SSA denied plaintiff's claims. *See id.* at 1836-43 (*See* Dkt. No. 7-1). Plaintiff sought reconsideration, which the SSA denied on June 30, 2022. *See id.* at 1844-51 (*See* Dkt. No. 7-1). Plaintiff appealed and requested a hearing. *See id.* at 1852-54 (*See* Dkt. No. 7-1). On October 18, 2022, a hearing was held before ALJ Bruce Fein. *See id.* at 2940-65 (*See* Dkt. No. 11-1). On October 26, 2022, the ALJ issued an unfavorable decision. *See id.* at 2849-68 (*See* Dkt. No. 7-4). On December 23, 2022, the Appeals Council affirmed the ALJ's determination, and the decision became final. *See id.* at 2869-74 (*See* Dkt. No. 7-4).

Plaintiff timely commenced actions in this Court, appealing the Commissioner's January 14, 2022, and December 23, 2022, decisions. *See* T. at 2836-37; 2875-2906 (*See* Dkt. No. 7-4). On December 19, 2022, and July 20, 2023, the Court granted the parties' stipulations for remand, reversing the Commissioner's January 14, 2022, and December 23, 2022, decisions, and remanding the matters for "further administrative proceedings" pursuant to 42 U.S.C. § 405(g). *Id.* at 2838-39, 2907-09 (*See* Dkt. No. 7-4). On September 8, 2023, the Appeals Council remanded plaintiff's claims to the ALJ. *See id.* at 2841-48 (*See* Dkt. No. 7-4). On February 7, 2024, another hearing was held before ALJ Kenneth Theurer. *See id.* at 2795-2808 (*See* Dkt. No. 7-3). On February 29, 2024, the ALJ issued an unfavorable decision. *See id.* at 1763-93 (*See* Dkt. No. 7-1). Plaintiff timely commenced the instant action on June 25, 2024. *See* Dkt. No. 1.

## II. **Legal Standards**

### A. **Standard of Review**

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id.* (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotations marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's

position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

### B. **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  *Id.* § 423(d)(1)(A).  "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience."  *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)).  "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'"  *Id.* (citing 42 U.S.C. § 423(d)(3)).  "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'"  *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)).  "The plaintiff bears the initial burden of proof to establish each of the first four steps."  *Id.* (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)).  "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere."  *Id.* (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III.  **The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first noted that plaintiff had "engaged in substantial gainful activity through March 2021."  T. at 1769 (*See* Dkt. No. 7-1).  The ALJ concluded that there was "a continuous 12-month period during which the claimant did not engage in substantial gainful activity," and as a result, he

"address[ed] the remaining steps of the sequential evaluation." *Id*. at 1770 (*See* Dkt. No. 7-1). At step two, the ALJ found that plaintiff "has the following severe impairments: obesity, disorder of the lumbar spine, disorder of the feet, migraine headaches, anxiety disorder, depressive disorder, and posttraumatic stress disorder." *Id*. (*See* Dkt. No. 7-1). At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 1772 (*See* Dkt. No. 7-1).

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except he can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit for up to six hours, and stand or walk for approximately four hours in eight-hour day with normal breaks. He can occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; can perform occasional balancing, stooping, kneeling, crouching, and crawling. He can engage in more than frequent handling or fingering with the right upper extremity. The claimant should avoid exposure to unprotected heights or hazardous machinery. The claimant can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations, 1993 Edition; and should avoid work outdoors in bright sunshine and work with bright or flickering lights such as would be experienced in welding or cutting metals. The claimant should have ready access to rest room facilities at the workplace.
>
> The claimant's work is limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements as would be experienced on an assembly line; involving only simple, work-related decisions; with few, if any, workplace changes. He can interact with coworkers, supervisors, and the public on an occasional basis throughout the workday after learning his job duties from an instructional or demonstrational lesson.

T. at 1774-75 (*See* Dkt. No. 7-1).[5] At step four, the ALJ determined that plaintiff "is unable to perform any past relevant work." *Id*. at 1785 (*See* Dkt. No. 7-1). At step five, the ALJ

---

[5] Light work is defined as

determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. (*See* Dkt. No. 7-1). The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from January 28, 2021, through the date of this decision." *Id*. at 1786 (*See* Dkt. No. 7-1).

IV. **Discussion**

A. **The Parties' Arguments**

Plaintiff argues that the ALJ failed to comply with the Appeals Council's prior remand order, and the ALJ's analysis conflated the supportability and consistency factors in addressing each medical opinion. *See* Dkt. No. 14 at 13-14. More specifically, plaintiff argues that the ALJ did not (1) consider all of Dr. Morten's medical opinions and cherry-picked only those opinions supporting his decision; (2) consider whether the medical opinions of Dr. Baldini and Dr. Angelotti were supported by, and consistent with, the other evidence of record; and (3) sufficiently explain his reliance on Dr. Alexander's mental health opinion and rejection of Drs. Ochoa, Ferrin, Sherer, and Bruni's opinions. *See id*.

---

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

at 15, 26-27, 31-32.  Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence due to these errors.  *See id.* at 15.

The Commissioner argues that the ALJ's determination should be affirmed.  *See generally* Dkt. No. 20.  Further, the Commissioner maintains that the ALJ complied with the prior remand order and properly considered the supportability and consistency factors when evaluating the medical opinions of record and determining plaintiff's RFC.  *See id.* at 8-24.

In reply, plaintiff argues the ALJ's supportability and consistency analysis for each medical opinion is inadequate, and the Commissioner's assertion that "the ALJ implicitly considered the supportability and consistency factors in relation to Dr. Moten's opinions about Plaintiff's headaches, peripheral neuropathy, and back issues" applies the wrong legal standard.  Dkt. No. 21 at 2 (quoting Dkt. No. 20 at 8); *see generally* Dkt. No. 21.  In sur-reply, the Commissioner asserts that his arguments are made in good faith and that he does not mischaracterize the evidence.  *See* Dkt. No. 22-1.

## B.  **RFC Legal Standard**

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms."  *Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945))).  "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ."  *Id.* (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order)

(citing 20 C.F.R. § 404.1527(d)(2))).  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient."  *Id*. (quoting *Martone*, 70 F. Supp. 2d at 150 (citations omitted)).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources."  *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)).  "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole."  *Id*. (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)).  "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]'"  *Id*. (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (internal citation omitted)).  "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision."  *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted).  "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, but [t]he Court will not reweigh the evidence that was before the

ALJ." *Id.* (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted).

"For claims filed on or after March 27, 2017," an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a) (internal citation omitted). Rather, medical opinions and PAMFs are evaluated based on their "persuasiveness." *Id.* In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5). "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'" *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" prong, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y.

Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'").  With regard to the "consistency" prong, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted."  *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted).  "However, they must articulate how persuasive they found the medical opinions and PAMFs."  *Id.* (citing 20 C.F.R. § 416.920c(b)).  "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'"  *Id.* (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-

1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.")

### C. **Prior Remand Order**

#### 1. **Legal Standard**

"[W]here a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Ejenie M. v. Comm'r of Soc. Sec.*, No. 5:23-CV-1251 (DNH/CFH), 2024 WL 5052953, at *9 (N.D.N.Y. Dec. 9, 2024), *report and recommendation adopted,* No. 5:23-CV-1251 (AJB/CFH), 2025 WL 81074 (N.D.N.Y. Jan. 13, 2025) (quoting *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014)). "This rule applies in the Social Security context pursuant to the regulations, as ALJ is directed to 'take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.'" *Id.* (quoting 20 C.F.R. § 416.1477(b)).

"A failure to comply with the Appeals Council's remand order may be grounds for remand." *Ejenie M.*, 2024 WL 5052953, at *9 (first citing *Dommes v. Colvin*, No. 3:15-CV-977 (GTS), 2016 WL 7104900, at *4-5 (N.D.N.Y. Dec. 6, 2016), then citing *Mortise v. Astrue*, 713 F. Supp. 2d 111, 123-24 (N.D.N.Y. 2010)); *Parks v. Colvin*, No. 15-CV-6500 (FPG), 2017 WL 279558, at *3 (W.D.N.Y. Jan. 23, 2017) ("The ALJ's failure to abide by the directives in an Appeals Council remand order constitutes legal error requiring

remand."). "However, where an issue is not precluded by remand order or the judgment of the court in the prior judicial review, that issue may be decided differently . . . on remand if the Commissioner applies the correct legal standard and substantial evidence in the record as a whole supports the decision." *Ejenie M.*, 2024 WL 5052953, at *9 (quoting *Gusky v. Astrue*, 954 F. Supp. 2d 180, 190 (W.D.N.Y. 2013) (quoting *Thompson v. Astrue*, 583 F. Supp. 2d 472, 475 (S.D.N.Y. 2008)) (internal quotation marks omitted); *see also Marvin v. Colvin*, No. 3:15-CV-74 (GLS/CFH), 2016 WL 2968051, at *2 (N.D.N.Y. May 20, 2016) (citing *Thompson*, 583 F. Supp. 2d at 475) (". . . in the absence of limiting instructions or court findings, the Commissioner may revisit on remand any issues relating to the application for benefits.").

### 2. **Analysis**

#### a. **Drs. J. Ochoa, Psy.D., H. Ferrin, Ph.D, Y. Sherer, Psy.D., and T. Brunni, Ph.D**

In the September 2023 remand order, the Appeals Council determined that

in evaluating the opinion of internal medicine consultative examiner, Rita Figueroa, M.D., (who opined the claimant had no physical limitations but should avoid exposure to high noise level areas) and the prior administrative medical findings of State agency consultants, J. Ochoa, Psy.D., and H. Ferrin, Ph.D. (both of whom found the claimant's mental impairments were non-severe), the [ALJ] considered the consistency factor but not the supportability factor (Decision, pp.4, 8; Exhibits 1A, pp.6-7; 3A, pp.8-9; 6F, p.5). Thus, further evaluation of the opinion evidence and prior administrative medical findings, with specific consideration of both the supportability and consistency factors, is necessary.

T. at 2843-44 (*See* Dkt. No. 7-4).

In the February 2024 hearing decision, the ALJ noted that "both Dr. Ochoa and Dr. Ferrin concluded that the claimant does not have 'severe' mental impairments (Exhibits 1A, 3A). In the subsequent application, Y. Sherer, Psy.D., and T. Brunni, Ph.D., State Agency medical consultants (Exhibits B2A, B4A), also found no evidence of a 'severe'

mental impairment." T. at 1776 (*See* Dkt. No. 7-1). The ALJ determined that the opinions of Drs. J. Ochoa, Psy.D., H. Ferrin, Ph.D, Y. Sherer, Psy.D., and T. Brunni, Ph.D. "are somewhat persuasive, because these opinions have some support from their detailed review of the record and are consistent with one another." *Id*. (*See* Dkt. No. 7-1). Yet, in support of his conclusion, the ALJ cites to many other records that he determined are consistent and inconsistent with the opinions of Drs. J. Ochoa, Psy.D., H. Ferrin, Ph.D, Y. Sherer, Psy.D., and T. Brunni, Ph.D., but there is no discussion or meaningful analysis of the evidence that supports the state medical consultants' opinions themselves. *See id.* at 1766-87 (*See* Dkt. No. 7-1). "Such conclusory statements offer no insight into how well [either doctor] supported and explained their opinion, and are insufficient to withstand review." *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) (first quoting *Vellone v. Saul*, No. 1:20-CV-261 (RA/KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone o/b/o Vellone v. Saul*, No. 20-CV-261 (RA), 2021 WL 2801138 (S.D.N.Y. July 6, 2021), then citing *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021)); *Colleen J. v. Comm'r of Soc. Sec.*, No. 5:23-CV-965 (MAD/DJS), 2025 WL 905661, at *4 (N.D.N.Y. Jan. 23, 2025), *report and recommendation adopted sub nom. Colleen J. v. Dudek*, No. 5:23-CV-965 (MAD/DJS), 2025 WL 904494 (N.D.N.Y. Mar. 25, 2025) (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, 2022 WL 507367, at *6 (N.D.N.Y. Feb. 18, 2022) (quoting 20 C.F.R. § 404.1520c(b)(2))) ("This cursory explanation is insufficient to 'explain *how* [the ALJ] considered the supportability . . . factor[].' The regulations require more.") (emphasis in original). Rather, the ALJ must examine "what [the medical examiners] used to support

their opinions and reach their ultimate conclusions." *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718 (FPG), 2021 WL 856909, at \*5 (W.D.N.Y. Mar. 8, 2021) (citation omitted).

Plaintiff correctly argues that the ALJ appears to have conflated the supportability and consistency factors and that the ALJ's supportability analysis is inadequate. *See* Dkt. No. 14 at 14; Dkt. No. 21; 20 C.F.R. §§ 416.920c(c)(1)-(2); *Melissa W. v. Comm'r of Soc. Sec.*, No. 1:22-CV-891 (JGW), 2025 WL 1929917, at \*9 (W.D.N.Y. July 14, 2025) (citing *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at \*8 (S.D.N.Y. Mar. 18, 2022)) ("Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record.").   Accordingly, the undersigned concludes that the ALJ failed to comply with the Appeals Council's September 2023 remand order directing the ALJ to discuss the supportability factor of the state medical consultants' opinions, and the undersigned recommends remand to comply with that directive. *See* T. at 2843-44 (*See* Dkt. No. 7-4); *Ejenie M.*, 2024 WL 5052953, at \*9; *see also* 20 C.F.R. § 416.920c(c)(1); *Kathleen A.*, 2022 WL 673824, at \*4 (quoting *Carmen M*, 2021 WL 5410550, at \*4).

### b. **Dr. Moten, M.D.**

### i. **Shoulder Condition**

Concerning plaintiff's bilateral shoulder condition, the September 2023 Appeals Council remand order states:

> In stating he was "not very persuaded," by Dr. Moten's opinions regarding the claimant's ability to lift, push, and pull, the [ALJ] stated, in part, that they were contradicted by the doctor's remarks that there were "no findings, signs, or symptoms to support a diagnosis" of a bilateral shoulder disorder (Decision, p.8, citing Exhibit 4F, p.265).  However, the [ALJ] found that one of the claimant's severe impairments was "disorder of the shoulders"

(Decision, p.4).  On the same page that the decision cites, Dr. Moten indicated there was "objective evidence of pain" upon range of motion and non-weight bearing testing of both shoulders (Exhibit 4F, p.265). In discounting Dr. Moten's assessment that the claimant needed the ability to alternate between sitting and standing, the [ALJ] cited an EMG/nerve conduction study that did not find conclusive evidence of lumbar radiculopathy (Decision, p.8, citing Exhibit 3F, pp.251-52).  However, the decision does not address evidence from Dr. Moten that could be supportive of her opined limitations or evidence from other sources that could be consistent with them.

T. at 2844 (*See* Dkt. No. 7-4).

In analyzing Dr. Moten's medical opinion in the February 2024 hearing decision on appeal, the ALJ found Dr. Moten's opinion to be unpersuasive.  *See* T. at 1778.  In reaching this conclusion, the ALJ again relied on Dr. Moten's "own treatment notes, which found 'no findings, signs, or symptoms to support a diagnosis' for his bilateral shoulder disorder (Exhibit 4F, page 265)."  *Id*. at 1778 (*See* Dkt. No. 7-1).  Yet, as noted above, "Exhibit 4F, page 265" is the same record that the Appeals Council found inadequate to support the ALJ's supportability determination.  *See id*. at 2844 (*See* Dkt. No. 7-4).

The ALJ's description of Dr. Moten's treatment notes which the ALJ states, "found 'no findings, signs, or symptoms to support a diagnosis' for his bilateral shoulder disorder (Exhibit 4F, page 265)" is factually inaccurate.  T. at 1778 (*See* Dkt. No. 7-1).  The ALJ's supportability analysis correctly cites Dr. Moten's evaluation reports "noting full strength in the right and left shoulder, normal sensation in her upper extremities, full grip strength in the upper extremities, and normal deep tendon reflexes in the upper extremities (Exhibit 4F, pages 228-229, 261)."  *Id*. (*See* Dkt. No. 7-1); *see id*. at 913-14, 946 (*See* Dkt. No. 6-7).  However, the ALJ omits other portions of Dr. Moten's findings.  Dr. Moten's examination report also noted (1) decreased range of motion for both shoulders that caused functional loss; (2) pain during initial range of motion testing, but "pain . . . on

exam but does not result in functional loss"; (3) pain, fatigue, weakness, and lack of endurance with repetitive use over time that causes functional loss; and (4) that plaintiff suffered from flare ups that caused pain, fatigue, weakness, and lack of endurance and resulted in functional loss.  *Id*. at 943, *see id.* at 943-45 (*See* Dkt. No. 6-7).  The ALJ does not consider these symptoms and examination results as part of his supportability analysis of Dr. Moten's opinion, despite that such records might provide support for Dr. Moten's findings of shoulder limitations.  *See id*. at 1778-79 (*See* Dkt. No. 7-1).

Additionally, the ALJ mischaracterizes Dr. Moten's opinion as a whole.  Exhibit 4F, page 265 contains Dr. Moten's medical opinion for plaintiff's bilateral shoulder condition.  *See id*. at 950 (*See* Dkt. No. 6-7).  As the Appeals Council noted, "[o]n the same page of that [the ALJ] decision cites, Dr. Moten indicated that there was 'objective evidence of pain' upon range of motion and non-weight bearing testing of both shoulders (Exhibit 4F, p. 265)."  *Id*. at 2844 (*See* Dkt. No. 7-4); *see also id*. at 950 (*See* Dkt. No. 6-7).  As stated above, Dr. Moten also noted full strength in both shoulders, as well as normal sensation, full grip strength, and normal deep tendon reflexes in the upper extremities.  *See id*. at 913-14, 946 (*See* Dkt. No. 6-7).  Dr. Moten concluded that these examination results did not support a diagnosis of plaintiff's claimed condition of bilateral shoulder arthritis.  *See id*. at 950 (*See* Dkt. No. 6-7).  Dr. Moten then stated, "[f]or the claimed condition of shoulder pain (left) please refer to the diagnosis section."  *Id*. at 950 (*See* Dkt. No. 6-7).  The diagnosis section of Dr. Moten's shoulder examination report states that plaintiff is diagnosed with bilateral rotator cuff tendonitis.  *See id*. at 941 (*See* Dkt. No. 6-7).  It is unclear why the ALJ appears to have concluded that Dr. Moten's diagnosis of bilateral rotator cuff tendonitis does not constitute a bilateral shoulder condition.  *See* T. at 1778

(*See* Dkt. No. 7-1).  Although Dr. Moten rejected plaintiff's claim that he had bilateral shoulder arthritis, and relied on certain normal exam results in doing so, Dr. Moten diagnosed plaintiff with a different shoulder condition, bilateral rotator cuff tendonitis, and concluded that plaintiff did have associated pain and potential functional limitations.  *See id.* at 941, 950 (*See* Dkt. No. 6-7).  As the ALJ does not cite to any additional evidence or other medical source to support the conclusion that plaintiff does not have any bilateral shoulder condition, nor does he even address plaintiff's bilateral shoulder tendonitis or Dr. Moten's positive findings, it appears that the ALJ is attempting to substitute his own judgment for that of a competent medical opinion.  *See Balaguer Perez v. Berryhill*, No. 17-CV-3045 (JMA), 2019 WL 1324949, at *5 (E.D.N.Y. Mar. 25, 2019) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)) ("[A]lthough the RFC determination is an issue reserved for the ALJ, an ALJ 'cannot arbitrarily substitute [her] own judgment for [a] competent medical opinion.'") (internal citation omitted)); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) (citation omitted) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

Moreover, the ALJ concluded that

Dr. Moten's opinion is also inconsistent with the claimant's self-reports, including his statement that he could lift up to 20 pounds (Exhibit 12F, page 38), his categorization that his lower back pain was four out of ten (Exhibit B11F, page 19), his reports that his lower back pain improved with treatment (Exhibit B11F, pages 48, 89), and his own denial of difficulty with gait or weakness (Exhibit B2F, page 147).  In September 2022, the claimant reported that he was doing well since his last visit with notations that he put on a deck at his rental property and was constantly carrying, lifting, and driving materials (Exhibit B11F, page 19).

T. at 1778-79 (*See* Dkt. No. 7-1).  Yet, ALJ does not relate these records to plaintiff's bilateral shoulder condition or explain why he believes this evidence is inconsistent with Dr. Moten's findings.  Rather, the ALJ considers these records in the context of plaintiff's bilateral lower extremities and neurological condition.  *See id*. (*See* Dkt. No. 7-1).

Therefore, the undersigned concludes that the ALJ failed to comply properly with the Appeals Council's September 2023 remand order directing the ALJ to reevaluate the supportability factor of Dr. Moten's right shoulder opinion, and the undersigned recommends remand to comply with that directive.  *See* T. at 2844 (*See* Dkt. No. 7-4); *Ejenie M.*, 2024 WL 5052953, at *9; *see also* 20 C.F.R. § 416.920c(c)(1); *Kathleen A.*, 2022 WL 673824, at *4 (quoting *Carmen M*, 2021 WL 5410550, at *4).

### ii.  **Neurological Condition**

The September 2023 Appeals Council remand order also addressed the ALJ's treatment of Dr. Moten's opinions of plaintiff's bilateral lower extremities neurological condition.  *See* T. at 2844 (*See* Dkt. No. 7-4).  The Appeals Council stated that

> Dr. Moten also noted symptoms of severe, intermittent pain in the lower extremities, paresthesias and/or dysesthesias in the lower extremities, mild numbness in the lower extremities, and decreased sensation (Exhibit 4F, pp.227-229).  A February 2020 MRI of the lumbar spine revealed worsening degenerative disc disease at L4-5 and L5-S1, with "increasingly prominent mild spinal stenosis" at L4-5 (Exhibit 12F, pp.89-90).  In August 2021, findings from a physical examination included restricted lumbar range of motion, with pain upon both forward flexion and extension; and tenderness of the lumbar paraspinal muscles (Exhibit 12F, p.89). In October 2021, findings from a physical examination included decreased sensation, positive straight leg raise testing bilaterally, positive lumbar facet loading bilaterally, positive Faber tests bilaterally, positive Yeoman's tests bilaterally, and positive sacroiliac distraction and compression tests bilaterally (Exhibit 12F, p.39).  Although the [ALJ] cited evidence tending to support his conclusions regarding Dr. Moten's opinions, the decision does not consider the foregoing evidence, which as noted, could be supportive of and consistent with the doctor's opinions.

*Id*.  (*See* Dkt. No. 7-4).

In the February 2024 hearing decision on appeal, the ALJ referenced Exhibit 4F, pages 227-29, at two places in his decision.  *See* T. at 1778, 1780 (*See* Dkt. No. 7-1).  However, page 1778 lists this evidence in consideration of plaintiff's shoulder condition.  *See id*. at 1778.  Similarly, the ALJ does not reference or discuss Exhibit 12F, page 39 at any point of the decision.  *See id*. at 1766-93 (*See* Dkt. No. 7-1).  Further, although the ALJ does discuss Exhibit 12F, page 89, the ALJ only analyzes this evidence in consideration of the consistency factor of Dr. Morten's opinion, but not in the context of the supportability factor as the Appeals Council directed.  *See id*. at 1778 (*See* Dkt. No. 7-1); 2844 (*See* Dkt. No. 7-4).  Therefore, the undersigned concludes that the ALJ failed to comply with the Appeals Council's September 2023 remand order directing the ALJ to reevaluate the supportability factor of his analysis of Dr. Moten's bilateral lower extremities neurological condition opinion, and the undersigned recommends remand to comply with that directive.  *See id.* (*See* Dkt. No. 7-4); *Ejenie M.*, 2024 WL 5052953, at *9; *see also* 20 C.F.R. § 416.920c(c)(1); *Kathleen A.*, 2022 WL 673824, at *4 (quoting *Carmen M*, 2021 WL 5410550, at *4).

The undersigned also notes that the ALJ listed "disorder of the shoulders" as a severe impairment in the December 2021 hearing decision, but not in the February 2024 hearing decision on appeal.  T. at 18 (Dkt. No. 6-2); *see* T. at 1770 (Dkt. No. 7-1).  In the February 2024 hearing decision, the ALJ discussed the evidence supporting his determination that plaintiff's bilateral shoulder pain was not a severe impairment, but the ALJ never explained why he treated the evidence of record differently or why he changed his conclusion that "disorder of the shoulders" was no longer a severe impairment as

compared to the December 2021 hearing decision.  *See id*. at 1771 (Dkt. No. 7-1).  On remand, the ALJ should address these issues.

### c. **Dr. Angelotti**

The September 2023 Appeals Council remand order determined that "while the [ALJ's] decision considers the consistency factor with respect to Dr. Angelotti's assessment, it does not consider the supportability factor."  T. at 2843 (*See* Dkt. No. 7-4). In the February 2024 hearing decision on appeal, the ALJ found Dr. Angelotti's opinion to be "highly persuasive," concluding that "Dr. Angelotti's opinion is supported by a detailed narrative rationale, and this rationale cites supporting objective medical evidence and other evidence from the record (Exhibit 3A, pages 11-14)."  *Id*. at 1776-77 (*See* Dkt. No. 7-1).   Yet, it is unclear to what "detailed narrative rationale" the ALJ is referring because the ALJ does not analyze or provide any meaningful discussion of Dr. Angelotti's opinion. *See id*. (*See* Dkt. No. 7-1); *see also Ayala*, 620 F. Supp. 3d at 31; *Colleen J.*, 2025 WL 905661, at *4; *Brianne S.*, 2021 WL 856909, at *5.  Dr. Angelotti's RFC discussion consists of short phrases and single-word responses without any explanation connecting the evidence to his RFC conclusion.  *See id*. at 96-98 (*See* Dkt. No. 6-3).  Similarly, Dr. Angelotti's RFC "additional explanation section" merely lists plaintiff's treatment records consisting of diagnostic test results and diagnoses without any reference to his RFC determination other than "RFC as above."  *Id*. at 99; *see id*. at 98-99.  Therefore, the undersigned concludes that the ALJ failed to comply with the Appeals Council's September 2023 remand order directing the ALJ to reevaluate the supportability factor of his analysis of Dr. Angelotti's opinion, and the undersigned recommends remand to comply with that directive.  *See* T. at 2843 (*See* Dkt. No. 7-4); *Ejenie M.*, 2024 WL

5052953, at *9; *see also* 20 C.F.R. § 416.920c(c)(1); *Kathleen A.*, 2022 WL 673824, at *4 (quoting *Carmen M*, 2021 WL 5410550, at *4).

D.  **ALJ's Treatment of the Evidence**

1.  **Dr. Alexander, Psy.D.**

The ALJ determined that Dr. Alexander, Psy.D's consultative opinion was persuasive, concluding that Dr. Alexander's opinion was "consistent with the claimant's mental health treatment history, and his mental status examinations of record" and "consistent with the fact that the claimant's psychological symptoms improved with treatment."  T. at 1779 (*See* Dkt. No. 7-1).  Yet, as plaintiff correctly points out, on eight separate occasions between December 2021 and April 2022, he was documented as suffering from suicidal ideation with symptoms of varying intensity.  *See id*. at 2106, 2155, 2159, 2179, 2184, 2190-91, 2562, 2569 (*See* Dkt. No. 7-1).  Dr. Alexander's opinion is dated May 9, 2022.  *See id*. at 2505 (*See* Dkt. No. 7-1).  Dr. Alexander's opinion does not list the evidence he reviewed in formulating his opinion.  *See id.* at 2505-09 (*See* Dkt. No. 7-1).  Rather, Dr. Alexander references a 2005 Upstate Hospital record and VA hospital records from 2015 and 2019 in passing while discussing plaintiff's medical history.  *See id.* at 2505 (*See* Dkt. No. 7-1).  As such, it is unclear whether Dr. Alexander reviewed the records documenting plaintiff's suicidal ideation and apparent worsening of his mental health condition prior to formulating his opinion.  If Dr. Alexander did consider these records, Dr. Alexander does not explain why he believes plaintiff's mental health condition improved when plaintiff reported suicidal ideation one month before Dr. Alexander's examination.

Further, the ALJ does not discuss the records documenting plaintiff's suicidal ideation anywhere in the February 2024 hearing decision, and it is unclear how the ALJ concluded that Dr. Alexander's opinion was consistent with other records indicating that plaintiff's psychological symptoms improved, when there are medical reports suggesting that plaintiff's mental health symptoms worsened.  The undersigned concludes that the ALJ's treatment of the evidence amounts to impermissible cherry-picking and does not satisfy the analysis 20 C.F.R. § 404.1520c requires.  *See Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *April B.*, 2019 WL 4736243, at *6); *Lawrence K. v. Comm'r of Soc. Sec.*, No. 5:23-CV-496 (DNH/CFH), 2024 WL 4133823, at *5 (N.D.N.Y. July 10, 2024), *report and recommendation adopted,* No. 5:23-CV-496, 2024 WL 3823486 (N.D.N.Y. Aug. 15, 2024) (*Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (citing *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *27 (S.D.N.Y. Sept. 24, 2021) ("Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his [or her] RFC determination while ignoring other evidence to the contrary."; *Jackson v. Comm'r of Soc. Sec.*, No. 16-CV-6183 (KAM), 2019 WL 7283518, at *7 (E.D.N.Y. Dec. 27, 2019) (citing *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010)) ("Reviewing courts decry administrative cherry-picking of relevant evidence . . . Cherry-picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both."). The undersigned recommends remand to correct this error and for the ALJ to reevaluate whether Dr. Alexander's opinion is consistent with the record as a whole.  *See Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *April B.*, 2019 WL 4736243, at *6); *Lawrence K.*, 2024 WL 4133823, at *5; 20 C.F.R. § 416.920c(c)(2).

2.  **Dr. Baldini**

The ALJ found Dr. Baldini's opinion to be "not very persuasive."  T. at 1779 (*See*

Dkt. No. 7-1).  The undersigned concludes that the ALJ's supportability analysis of Dr.

Baldini's opinion fails to satisfy § 416.920c(c)(1) for two reasons.  First, the ALJ concluded

that "Baldini's opinion is also inconsistent with the claimant's self-report that he did not

have any radiation of pain, numbness, or weakness, and that his symptoms improved

with treatment (Exhibits 8F, pages 1, 2, 3, 4, 5, 6, 7, 9, 10, 12, 14, 16, 17, 19, 20; 14F,

page 1)."  *Id*. at 1779 (*See* Dkt. No. 7-1).  However, it is unclear to which of plaintiff's self-

reports the ALJ is referring.  If the ALJ is referring to plaintiff's self-reports to Dr. Baldini

referenced in the February 2024 hearing decision on appeal, the pages of Dr. Baldini's

opinion that the ALJ cites indicate that plaintiff complained of achy and sharp intermittent

lumbar/sacral/pelvic pain that radiated to his right buttock and leg.  *See id*. at 1472-77,

1480-81, 1483, 1485, 1487-88, 1491 (*See* Dkt. No. 6-8).  If the ALJ is referring to plaintiff's

other self-reports to Dr. Baldini not referenced in the February 2024 hearing decision on

appeal, those records also indicate that plaintiff suffered from constant, achy, sharp

lumbar/sacral/pelvic pain, that, in some reports, radiated to his right buttock and leg.  *See*

*id.* at 2669-78 (*See* Dkt. No. 7-2).  If the ALJ is referring to self-reports elsewhere in the

record, the administrative transcript is replete with records noting that plaintiff complained

of, or was treated for, low back pain that radiated to his feet.  *See id.* at 1434, 1442, 1508,

1514, 1522, 1528, 1534, 1550, 1566-67, 1582, 1586, 1590, 1594, 1601, 1603, 1647,

1649-50, 1654, 1662, 1675, 1683, 1687, 1697, 1707, 1710, 1715, 1717, 1720, 1727,

1738, 2086, 2092, 2129, 2148, 2151, 2192, 2215, 2217, 2221-23, 2225, 2227, 2232,

2242-43, 2247, 2250, 2259-62, 2267, 2270-76, 2289, 2307, 2309-10, 2315, 2439, 2460-

68, 3351-53, 3358, 3375, 3383, 3387, 3397, 3401-02, 3446-47, 3471, 3473-76, 3523, 3527-28, 3555, 3567-69, 3580, 3590-92, 3602-04, 3612-17, 3639-42, 3653-55, 3663-66, 3674-77, 3685-77, 3694, 3704-8 (*See* Dkt. Nos. 6-8, 7-1, 9-1, 10-1).

Second, the ALJ concluded that "physical examinations showed that the claimant was in no discomfort while sitting, which undermines the sitting restrictions [Dr.] Baldini provided (Exhibits 3F, pages 156, 246; 5F, page 161)."  T. at 1779 (*See* Dkt. No. 7-1). The ALJ is correct that Exhibit 3F, pages 156 and 246, and Exhibit 5F, page 161 note that plaintiff did not suffer from any sitting discomfort. *See id*. at 662, 752, 1120 (*See* Dkt. Nos. 6-7, 6-8).  Yet, as plaintiff correctly points out, the administrative transcript contains other records noting that he suffered from sitting discomfort or restrictions.  *See id.* at 1434, 1649, 2129, 2148, 2182, 2727, 3567, 3639 (*See* Dkt. Nos. 6-8, 7-1, 10-1).  The ALJ's analysis amounts to impermissible cherry-picking.  *See Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *April B.*, 2019 WL 4736243, at *6); *Lawrence K.*, 2024 WL 4133823, at *5. The undersigned recommends remand to correct these errors and for the ALJ to reevaluate whether Dr. Baldini's opinion is supported by, and consistent with, the other evidence of record.  *See Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *April B.*, 2019 WL 4736243, at *6); *Lawrence K.*, 2024 WL 4133823, at *5; 20 C.F.R. §§ 416.920c(c)(1)-(2); *Kathleen A.*, 2022 WL 673824, at *4-5 (first quoting *Carmen M*, 2021 WL 5410550, at *4; then quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G.*, 2021 WL 5232722, at *4).

## V.  **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that plaintiff's motion (Dkt. No. 14) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's cross-motion (Dkt. No. 20) be **DENIED**, and the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report-Recommendation and Order; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to U.S.C. §636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED. R. CIV P. 6(a), 6(e), 72.

Dated: August 29, 2025
     Albany, New York

_____
    Paul J. Evangelista
    U.S. Magistrate Judge